Filed 5/20/25  P. v. Countryman CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TIMOTHY GENE COUNTRYMAN,<br><br>Defendant and Appellant. | F085441<br><br>(Super. Ct. No. BF188408A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Galit Lipa, State Public Defender, and Carrie C. Hall, Deputy State Public Defender, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

A jury convicted defendant Timothy Gene Countryman of receiving a stolen vehicle (Pen. Code,[1] § 496d, subd. (a)).  In bifurcated proceedings, the court found true two of three alleged prior conviction allegations (§ 666.5, subd. (a)).  Defendant was sentenced to an upper term of four years in county jail.

On appeal, defendant contends (1) the admission of prior conviction evidence at trial violated Evidence Code section 1101, subdivision (b) and his right to due process; (2) the court erred in admitting the prior conviction evidence for impeachment purposes because the prior conviction did not involve moral turpitude; (3) defendant's due process rights were violated by the prosecution's refusal to offer total immunity to what he characterizes as an essential and exculpatory witness; (4) the trial court abused its discretion under Evidence Code section 1230 by excluding the exculpatory witness's statements, which abuse denied defendant the right to present a defense; (5) the trial court erred in admitting and relying on uncertified hearsay documents to find the prior conviction allegations true; and (6) he was prejudiced by the cumulative effect of these errors.

We conclude the court abused its discretion in admitting evidence that defendant was convicted in 2005 in Kern County of a felony for taking or driving a vehicle without the owner's consent (Veh. Code, § 10851, subd. (a)), and the error was not harmless.  Accordingly, we reverse.

# BACKGROUND

At approximately 4:00 a.m. on October 29, 2021, Juan L.[2] parked his black, four-door, 2005 Chevy Silverado pickup truck at a gas station in Bakersfield.  The truck was

---

[1] Undesignated statutory references are to the Penal Code.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names.  No disrespect is intended.

registered in the name of Juan's wife's, Veronica, but Juan was the primary driver. Juan and his wife had purchased the vehicle approximately three years prior for about $18,000.

Juan locked the truck and left it in clean, functioning order, without missing parts. From there, a friend picked him up and drove him to Los Angeles. When Juan returned approximately 12 hours later, the truck was no longer there. Juan and Veronica reported the missing truck to law enforcement.

Bakersfield Police Officer J. Quiroz and his partner, Officer C. De La Cruz, were on patrol on December 3, 2021, at approximately 2:30 a.m., when they conducted a traffic stop on a black Chevy pickup being driven by defendant. They stopped the vehicle due to expired registration stickers. When they approached the vehicle, defendant reported that the vehicle belonged to a friend. Defendant stepped out of the vehicle and Quiroz examined the interior. The ignition was damaged and Quiroz did not find a key in the vicinity of the ignition. However, Quiroz found a pocketknife in the vehicle that he believed was used to start the vehicle, and he confirmed he was able to start the vehicle with the knife. Quiroz noted that the rear windshield was shattered, multiple speakers were missing, and there was broken glass in the interior and truck bed.

Quiroz ran the license plate from the truck and learned it was associated with a different-colored Chevy Silverado with a different vehicle identification number (VIN). Quiroz ran the VIN from the truck's windshield area and received the correct license plate information as well as a report that the vehicle had been reported stolen by Juan.

Quiroz explained that "subjects that have more experience with stealing vehicles . . . try to find a license plate that belongs to a vehicle similar to the stolen vehicle," so that law enforcement who run the plates may not necessarily appreciate that the vehicle was stolen, unless they also run the VIN. Quiroz testified that damage to the locking mechanism of the exterior of a vehicle, "busted windows," damage to the door frames, and damage to the ignition are all indicia of a stolen vehicle. A mismatch between the license plate and the VIN also can indicate the vehicle is possibly stolen.

3.

Juan and Veronica received a call from Quiroz, informing them the truck was found and asking them to verify whether it was theirs. When Juan saw the truck, he immediately recognized it as his. However, the truck no longer had its original license plate and it had been "completel[y] destroyed." A different license plate was on the rear of the truck. The windows were broken and the metal was bent. There was broken glass in the interior. The ignition was damaged, but the vehicle could be turned on by twisting the ignition without using a key. The truck made a lot of noise when Juan drove it and the catalytic converter was missing. Parts of the dash were removed, the driver's seat was torn, the interior door panels were damaged, and the speakers were missing. Juan did not find any paperwork in the vehicle and his personal items were missing.

De La Cruz recalled that either he or Quiroz showed one of the victims a photograph of defendant and they reported that they did not know him.

The parties stipulated that defendant was convicted in 2005 in Kern County of a felony for taking or driving a vehicle without the owner's consent.

Defendant testified in the defense case. He denied that he stole the vehicle or knew it was stolen. He received the car from someone named Jay, who he knew through an acquaintance. He had known Jay for four or five years. Defendant explained that Jay purchases old or "messed up" vehicles and fixes them up to sell for profit. Defendant had seen other cars that Jay bought before. He did not know or believe that Jay was involved with stolen cars.

Defendant explained that his own car broke down near Jay's house, so he walked to Jay's house and asked for a ride. Jay declined, but let defendant use his phone. Defendant called his wife, but she also was unavailable to give him a ride. At this point, it was past midnight. Jay then offered defendant the pickup truck to drive home. Defendant drove the vehicle and was stopped by police right in front of his own house. He had planned to return the vehicle to Jay later that day. When defendant was stopped by police, his tools were in the truck. He explained that, after Jay agreed to let him use

4.

the truck, he went around the corner to get his tools from his own vehicle so they would not be stolen.

Jay did not tell defendant the vehicle was stolen. Rather, Jay said he bought the vehicle earlier that day. Defendant and Jay did not discuss whether the vehicle was registered or who Jay bought it from. Defendant saw the car was "messed up" (boldface omitted) but did not think much about it. He started the car by turning the ignition but did not recall using a knife to start the car.

On cross-examination, defendant confirmed he was not paying attention to the damage to the vehicle and stated it did not "cross [his] mind" whether the vehicle was stolen.

## DISCUSSION

### I.  Admission of Defendant's Prior Conviction To Prove Absence of Mistake

Defendant argues the trial court abused its discretion under Evidence Code sections 352 and 1101, subdivision (b) by admitting into evidence his 2005 conviction for violation of Vehicle Code section 10851, subdivision (a) because it was "irrelevant and insubstantial." He further argues the improperly admitted evidence was prejudicial and violated his state and federal rights to due process and a fair trial.

As we explain, we conclude the court abused its discretion because the insubstantial probative value of the prior conviction evidence on an issue of material fact was outweighed by the danger of undue prejudice. We further conclude the admission of defendant's prior conviction was not harmless under the standard articulated in *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), and reversal is therefore required. Accordingly, we do not reach defendant's constitutional arguments.

### A.  Additional Background

Three prior conviction allegations were alleged in this case pursuant to section 666.5, subdivision (a):  a 2014 "conviction" (capitalization omitted) in Kern County

5.

Superior Court case No. BF154815 for violation of section 666.5, subdivision (a)[3]; a 2005 conviction in Kern County Superior Court case No. BF112314 for violation of Vehicle Code section 10851, subdivision (a); and a 1999 conviction in Kern County Superior Court case No. SC078045 for violation of Vehicle Code section 10851, subdivision (a).

In motions in limine, the prosecutor stated her intent to admit evidence of the 2005 conviction for violation of Vehicle Code section 10851, subdivision (a) to show absence of mistake.[4] Defense counsel argued evidence of the prior conviction was not relevant under Evidence Code section 1101, subdivision (b) to show absence of mistake without additional evidence regarding the nature of the offense. The prosecutor stated her intent to use only the conviction itself, without additional evidence. The court ultimately ruled that the prosecutor could use the 2005 conviction pursuant to Evidence Code 1101, subdivision (b) as evidence of absence of mistake. The court limited the evidence to "just . . . the conviction itself" including "the date, the code section, a description of the crime, and the fact that it was a felony but that's it." The court acknowledged that the remoteness of the prior conviction, as well as it being the same offense as charged in the current case, increased the potential for prejudice from the prior conviction evidence. However, the court ruled that the probative value of the sanitized conviction outweighed its prejudicial effect. (Evid. Code, § 352.)

The prosecutor later indicated her intent to dismiss count 1 against defendant, which alleged a violation of Vehicle Code section 10851, subdivision (a), and defense

---

[3] Section 666.5, subdivision (a) is not a substantive offense but rather sets forth an elevated sentencing triad that applies where the defendant has been convicted of certain prior and current offenses. Nonetheless, it was alleged in the information as a prior conviction and characterized as such by the prosecutor throughout the proceedings.

[4] At this point in the proceedings, the operative information also contained a charge of unlawfully driving or taking a vehicle in violation of Vehicle Code section 10851, subdivision (a) (count 1). However, this count eventually was dismissed.

counsel renewed her objection to admission of the 2005 conviction under Evidence Code section 1101, subdivision (b).  Defense counsel argued the prior conviction for driving or taking a vehicle did not necessarily involve theft nor indicate defendant knew how to identify stolen property.  The prosecutor argued the prior conviction was relevant to show it was not defendant's "first time encountering this type of situation."  The court declined to alter its prior ruling, opining that taking a vehicle and receiving a stolen vehicle bore similarly on the question of absence of mistake, and the prior offense was therefore relevant on that issue.  Furthermore, because the prior no longer involved the same offense charged in the current case, the potential for prejudice was reduced.

The parties agreed to submit a stipulation to the jury regarding the prior conviction but could not agree on the particulars of the stipulation.[5]  Defense counsel proposed a stipulation that described the offense as "taking or driving a vehicle without the owner's consent," whereas the prosecutor proposed a stipulation that described the offense as "vehicle theft."  Ultimately, the court approved the language proposed by the defense and the jury was informed:  "The parties stipulate that in 2005 the defendant . . . was convicted of a felony for taking or driving a vehicle without the owner's consent here in Kern County."

During closing argument, the prosecutor emphasized that the prior conviction could be used only for the "very limited purpose" of establishing absence of mistake.

## B.     Applicable Law

" ' "Subdivision (a) of [Evidence Code] section 1101 prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified

---

[5] The court clarified that, although defendant agreed to provide the jury with a stipulation regarding the prior conviction to avoid the prosecution submitting a certified rap sheet, he nonetheless preserved his objection to the admission of the prior conviction evidence.

occasion." ' " (*People v. Johnson* (2022) 12 Cal.5th 544, 610 (*Johnson*).)  However, subdivision (b) of Evidence Code section 1101 clarifies that this rule does not prohibit admission of evidence that a person committed a prior crime when such evidence is " 'logically, naturally, and by reasonable inference' " relevant to prove some fact at issue, other than character or propensity, such as absence of mistake or accident.  (*People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*); see Evid. Code, § 1101, subd. (b); see also *People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*).)  " 'When reviewing the admission of evidence of other offenses, a court must consider:  (1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant.' "  (*Fuiava*, at p. 667; accord, *Johnson*, *supra*, 12 Cal.5th at p. 610.)

Various degrees of similarity are required for a trial court to admit evidence pursuant to subdivision (b) of Evidence Code section 1101.  (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 239 (*Hendrix*).)  The least degree of similarity is required to prove intent and absence of mistake or accident.  (*Ewoldt*, *supra*, 7 Cal.4th at pp. 402–403.)  However, as a factual matter in some cases, the knowledge element of an offense may be "akin to absence of mistake."  (*Hendrix*, at p. 242.)  "When the knowledge element is akin to absence of mistake or innocent intent, an inference that defendant learned from his experiences and obtained information that establishes the requisite knowledge requires that the previous experiences be similar to the circumstances presented in the charged case.  As our high court has noted, ' "[T]he recurrence of a similar result . . . tends (increasingly with each instance) *to negative accident or inadvertence . . . or good faith or other innocent mental state*, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . ." ' "  (*Ibid*.)

8.

"[T]o establish knowledge when that element is akin to absence of mistake, the [Evidence Code section 1101, subdivision (b) evidence] must be sufficiently similar to the circumstances of the charged offense to support the inference that what defendant learned from the prior experience provided the relevant knowledge in the current offense." (*Hendrix*, *supra*, 214 Cal.App.4th at pp. 242–243.) "[T]he trial court ' " 'must look behind the label describing the kind of similarity or relation between the [uncharged] offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong.' [Citation.] If the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." ' " (*People v. Winkler* (2020) 56 Cal.App.5th 1102, 1145, italics omitted.)

The trial court judge has the discretion to admit other crimes evidence after weighing the probative value against the prejudicial effect pursuant to Evidence Code section 352. (*Fuiava*, *supra*, 53 Cal.4th at p. 667.) " 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' (Evid. Code, § 352.) ' " '[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " ' " (*Johnson*, *supra*, 12 Cal.5th at p. 610.) " ' "Since 'substantial prejudicial effect [is] inherent in [other crimes] evidence,' uncharged offenses are admissible only if they have *substantial* probative value." ' " (*Hendrix*, *supra*, 214 Cal.App.4th at p. 244.)

We review a trial court's rulings under Evidence Code sections 1101 and 352 for abuse of discretion.  (*Johnson*, *supra*, 12 Cal.5th at p. 610.)

## C.    Probative Value

We conclude that, although knowledge and absence of mistake were material facts at issue in defendant's trial, his prior conviction for violation of Vehicle Code section 10851, subdivision (a) was not probative of these issues.  (See *Fuiava*, *supra*, 53 Cal.4th at p. 667.)

"In order to satisfy the requirement of materiality, the fact sought to be proved or disproved must be either an ultimate fact or an intermediate fact from which such ultimate fact may be inferred."  (*Hendrix*, *supra*, 214 Cal.App.4th at p. 239.)  The offense of receiving stolen property requires that the defendant know the property is stolen.  (*In re Anthony J.* (2004) 117 Cal.App.4th 718, 728.)  In this context, knowledge is an ultimate fact, and absence of mistake is an intermediate fact.  (*Ibid.*)  Defendant put both knowledge and absence of mistake at issue.  He asserted he lacked knowledge the vehicle was stolen and believed it to be a car Jay had purchased and was in the process of fixing.  Accordingly, both knowledge and mistake of fact were material issues in the case.

However, defendant's prior conviction for violation of Vehicle Code section 10851, subdivision (a) had no probative value on these issues.  The prosecution's theory of absence of mistake was based, in part, on an inference that defendant learned unspecified information from his prior conviction that informed his knowledge the vehicle in the current case was stolen.  "To establish a defendant's guilt of violating Vehicle Code section 10851, subdivision (a), the prosecution is required to prove that the defendant drove or took a vehicle belonging to another person, without the owner's consent, and that the defendant had the specific intent to permanently or temporarily deprive the owner of title or possession."  (*People v. O'Dell* (2007) 153 Cal.App.4th 1569, 1574.)  Thus, Vehicle Code section 10851, subdivision (a) " 'proscribes a wide

range of conduct,' " including (1) unlawfully taking a vehicle with the intent to permanently deprive the owner of possession, (2) posttheft driving, and (3) joyriding, i.e., driving with intent to temporarily deprive the owner of possession. (*People v. Garza* (2005) 35 Cal.4th 866, 876; see *id*. at p. 871.) The record does not reflect the theory or facts under which defendant previously was convicted.

Certainly, defendant's prior conviction *at least* involved driving a vehicle belonging to another, without the owner's consent, and with the intent to temporarily deprive the owner of possession. Under certain facts, such conduct could potentially impart knowledge regarding vehicles used without the owner's consent that would be sufficient to negative defendant's claim of mistake as to the charged offense. (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) However, as stated, "an inference that defendant learned from his experiences and obtained information that establishes the requisite knowledge requires that the previous experiences be similar to the circumstances presented in the charged case." (*Hendrix*, *supra*, 214 Cal.App.4th at p. 242.) Here, there are no facts regarding defendant's conduct or the vehicle at issue in his prior conviction that would suggest his prior experience imparted any knowledge regarding identifying a stolen vehicle. Nor do the People attempt to identify any specific logical inferences regarding defendant's knowledge that may be drawn from this evidence, other than to argue generally that both offenses are "theft related" and therefore "sufficiently similar." And, although the People assert that "individuals who steal or drive a car obtained illegally typically access them by damaging components such as windows and ignition systems," there is no basis in the record to surmise that defendant's prior conviction involved a damaged vehicle or any other similarities to the charged offense.

In this regard, *People v. Clark* (2021) 62 Cal.App.5th 939 (*Clark*), is instructive. There, three defendants conducted an armed robbery and were convicted of second degree robbery, firearm enhancements, and possession of a firearm by a felon. At issue on appeal was whether the firearm used in the robbery was real. The trial court admitted

evidence of a prior firearm conviction against one defendant to prove the defendant knew the gun used in the charged robberies was real, and therefore that it indeed must have been real. (*Id*. at p. 944.) The appellate court held the trial court abused its discretion in admitting the prior conviction because the circumstances of the prior and charged offenses were so dissimilar as to have little tendency to prove knowledge: the firearms involved in each offense were markedly distinct, and the prior offense involved constructive possession, whereas the current offense involved actual possession. (*Id.* at p. 963.) Furthermore, "the inference the prosecution sought to establish," i.e., that the defendant knew the gun was real and therefore it was real, was weak. (*Id.* at p. 964.) Accordingly, the court determined the evidence was insufficiently probative and should not have been admitted. (*Id.* at pp. 964, 968.)

Similarly, in *Hendrix*, the defendant was convicted of resisting an executive officer by force or violence in the performance of his duty. (*Hendrix*, *supra*, 214 Cal.App.4th at pp. 220–221.) An issue at trial was whether the defendant knew the person he resisted was a police officer, rather than a private security guard he had encountered shortly before the incident and was fleeing from. (*Id.* at p. 221.) On this point, the trial court admitted evidence of two prior incidents that involved defendant unlawfully resisting police. (*Id.* at p. 220.) However, the appellate court held the prior incidents would be probative only if they also involved interaction with security guards, which would allow the inference that the defendant learned from those experiences "that the police become involved after an escalating confrontation with private security personnel," making it less likely the defendant mistook the police involved in the charged offense for private security. (*Id.* at p. 243.) Because one of the two prior incidents involved private security only as a minor witness, and the other did not seem to involve private security at all, neither gave rise to an inference that the defendant gained knowledge relevant to the charged offense. (*Id.* at pp. 243–244.) Accordingly, the court held the incidents "lacked probative value given the lack of similarity." (*Id.* at p. 244.)

Here, the lack of facts regarding defendant's prior conviction makes it impossible to determine whether it was similar in any material respect to the current offense. The logical inferences to be drawn from the prior conviction on an issue of material fact are weak to nonexistent. " ' "[I]f the connection between the uncharged offense and the ultimate fact in dispute is not clear, the evidence should be excluded." ' " (*Hendrix*, *supra*, 214 Cal.App.4th at p. 245.) Such was the case here.

### D.    Prejudicial Effect

"The third factor to consider in determining the admissibility of uncharged act evidence is the existence of any rule or policy requiring the exclusion of relevant evidence, i.e., prejudicial effect or other Evidence Code section 352 concerns." (*Clark*, *supra*, 62 Cal.App.5th at p. 966, fn. omitted.) Under Evidence Code section 352, "[n]ot only must the probative value of other crimes evidence be substantial, but the probative value must not be substantially outweighed by the probability that its admission would create a serious danger of undue prejudice." (*Hendrix*, *supra*, 214 Cal.App.4th at p. 246.) " ' "Evidence is prejudicial within the meaning of Evidence Code section 352 if it ' "uniquely tends to evoke an emotional bias against a party as an individual" ' [citation] or if it would cause the jury to ' " 'prejudg[e]' a person or cause on the basis of extraneous factors." ' " (*Ibid.*)

"In determining whether other crimes evidence is prejudicial, one factor courts look to is whether that evidence is inflammatory, i.e., whether the evidence is likely to inflame the jury's passions." (*Hendrix*, *supra*, 214 Cal.App.4th at p. 246.) Here, no inflammatory facts were provided regarding the prior offense. Nonetheless, evidence defendant previously was convicted of an offense that may have involved taking a motor vehicle without the owner's consent was inflammatory, if only because it could have caused the jury to believe defendant had a propensity toward vehicle theft or theft-related crimes.

We acknowledge the court gave a limiting instruction that prohibited the jury from relying on the prior conviction evidence to conclude defendant "has a bad character or is disposed to commit a crime." "As part of the [Evidence Code] section 352 prejudice analysis, courts consider whether the trial court gave a limiting instruction. A limiting instruction can ameliorate [Evidence Code] section 352 prejudice by eliminating the danger the jury could consider the evidence for an improper purpose." (*Hendrix*, *supra*, 214 Cal.App.4th at p. 247.) However, the limiting instruction given here is the same instruction determined to be inadequate to ameliorate the risk of undue prejudice under substantially similar circumstances in *Hendrix*. (*Id.* at pp. 247–248.) There, as here, the jury was instructed it could consider the other crimes evidence for the limited purpose of determining knowledge or absence of mistake. (*Id.* at p. 247.) In so doing, the jury was instructed to " 'consider the similarity or lack of similarity between the uncharged offenses and the charged offense.' " (*Ibid*.) However, the instruction did "not explain how similarity should be considered or what consideration, if any, a jury should give the evidence if it finds it dissimilar." (*Id.* at p. 248.) Because the prior conviction evidence was not probative of knowledge or absence of mistake, but rather only showed the defendant's propensity to commit the charged crime, the Court of Appeal held it could not "see how the jury could understand the parameters of the limiting language in the instruction. Thus, [it could not] presume the jury understood and followed that instruction. [Citation.] Nor [could it] say that the instruction eliminated the danger of or even minimized or reduced the potential for improper use of the other crimes evidence." (*Ibid*.)

The same is true here. The prior conviction evidence was not probative of knowledge or absence of mistake, and the limiting instruction was inadequate to ameliorate the potential for the jury to use the evidence for improper propensity

purposes.[6] Consequently, we conclude any probative value of the prior conviction evidence was substantially outweighed by its prejudicial effect.

### E. Harmless Error

Error in admitting evidence pursuant to Evidence Code section 1101, subdivision (b), constitutes state law error that is subject to review for prejudice under *Watson, supra*, 46 Cal.2d 818. (*Johnson, supra*, 12 Cal.5th at p. 611.) Under this standard, we examine whether it was "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.) We conclude the error was not harmless in this case.

We first consider the trial evidence regarding defendant's knowledge and his claim of mistake. The strongest evidence presented to rebut defendant's claim of mistake was the obvious condition of the vehicle itself. The evidence that the vehicle had a damaged ignition, no key, broken windows, and missing speakers should have led any reasonable person to question the vehicle's origin. However, on the issue of whether defendant actually *knew* the vehicle was stolen, this evidence was not overwhelming, particularly in light of defendant's testimony regarding Jay's claim of having purchased the vehicle and Jay's history of working on other damaged vehicles. While the jury was free to reject defendant's testimony on this point, we cannot say that, in doing so, it was not swayed by improper considerations based on the nonprobative prior conviction evidence. In other words, this is not a case where the evidence supporting the judgment is "relatively strong" and the evidence supporting a different outcome " 'so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 956, italics omitted.)

---

[6] Moreover, as explained below, the jury also was permitted to rely on the conviction to evaluate defendant's credibility, even though the record does not reflect the prior conviction involved a crime of moral turpitude.

15.

We also may consider the impact of the prosecutor's argument on the inferences to be drawn from the prior conviction evidence. (*Hendrix*, *supra*, 214 Cal.App.4th at pp. 249–250.) Here, the prosecutor's argument exacerbated the prejudicial effect of the evidence. In closing argument, the prosecutor addressed the prior conviction evidence and argued that, with defendant's "life experience, he should have been asking more questions." She additionally stated that willful ignorance was not an excuse for the crime. Defense counsel objected that the argument misstated the law, and the court referred the jury back to the instructions. The prosecutor once again stated that willful ignorance was not an excuse, at which point the court interjected to inform the jury that it was "not sure exactly what the prosecutor means," but the jury could not find defendant guilty if they found merely that he should have known the vehicle was stolen. Instead, the jury was required to find defendant knew the vehicle was stolen. The prosecutor then reiterated that the prior conviction was evidence of absence of mistake. However, as stated, the evidence was not probative on the issue of absence of mistake. Thus, like the jury instructions, the prosecutor's argument did not provide the jury with any proper inference to be drawn from this evidence, leaving open the possibility that it would be used for an improper purpose. (*Hendrix*, at p. 248.) The prejudicial effect of the nonprobative prior conviction evidence was intensified by the prosecutor's use of the evidence during closing argument.

We conclude it is reasonably probable that, absent proof that defendant had a prior conviction that may have been theft-related, and the prosecution's related argument, the jury would not have found the prosecution proved, beyond a reasonable doubt, that defendant knew the vehicle was stolen. Accordingly, we must reverse the conviction and associated allegations.

We therefore do not address defendant's contention that the erroneous admission of this evidence violated his due process rights, rendering his trial fundamentally unfair.

16.

However, we briefly touch on defendant's remaining contentions, which are mooted by our disposition.[7]

## II.     Admission of Defendant's Prior Conviction as Impeachment

Defendant contends the trial court erred in allowing him to be impeached with his prior conviction for violation of Vehicle Code section 10851, subdivision (a). The People contend the issue is forfeited, but nonetheless seemingly concede error and contend any error was harmless.

### A.     Additional Background

During motions in limine, the prosecutor stated she would "want to impeach [defendant] with everything [she] could impeach him with" if he were to testify. The court directed the prosecutor to identify the convictions she intended to use for impeachment. In a subsequent hearing, the prosecutor stated she did not intend to use defendant's prior convictions for impeachment due to the risk the convictions might be construed to constitute inappropriate propensity evidence. However, she agreed with the court that defendant's violation of Vehicle Code section 10851, subdivision (a) constituted a crime of moral turpitude. The prosecutor then sought permission to use defendant's prior convictions for impeachment, but stated she did not necessarily intend to do so. However, upon further questioning, she could not identify any specific prior conviction she intended to rely on. The court then stated, "[T]he prosecution will not be allowed to impeach the defendant then even in the event he testifies with any of the priors. It sounds like you weren't really interested in doing [it] anyway . . . so I'm going to rule that you're not allowed to . . . ." The prosecutor asked if she could seek permission to impeach defendant with prior convictions later in the trial. The court

---

[7] Because we have found defendant was prejudiced by the admission of his prior conviction, we do not address his claim that he was prejudiced by the cumulative effect of the remaining errors.

17.

declined the request and stated, "Now is the time. . . . You have his record. You know what the case is about."

The prosecutor then requested permission to impeach defendant with the 2014 "conviction" for "violation" of section 666.5, subdivision (a), as well as the 2005 and 1999 convictions for violation of Vehicle Code section 10851, subdivision (a). Defense counsel objected that the convictions were remote and irrelevant, and the 2014 offense did not involve a crime of moral turpitude. The court ruled that the prosecutor could impeach defendant with the 2005 conviction for violation of Vehicle Code section 10851, subdivision (a), which the court identified as a crime of moral turpitude, but not the 1999 conviction for the same offense due to its age. The court also ruled the prosecutor could not impeach defendant with his 2014 conviction because "there's confusion there about what he was even convicted of," and the court was "not even sure what's going on."

The prosecutor did not question defendant regarding the 2005 offense during cross-examination. Nor did the prosecutor argue during closing argument that the prior conviction could be used to impeach defendant's credibility. However, the jury was instructed that a prior felony conviction, and specifically the prior conviction for taking or driving a vehicle without the owner's consent, could be considered in evaluating defendant's credibility.

## B. Analysis

The People are correct that defendant did not assert in the trial court that his conviction for violation of Vehicle Code section 10851, subdivision (a) was not a crime of moral turpitude. We nonetheless address the issue briefly to provide guidance on remand.

On appeal, the parties agree on the following: A witness may be impeached with prior convictions involving moral turpitude. (*People v. Wilson* (2024) 16 Cal.5th 874, 912.) Auto theft is a crime of moral turpitude. (*People v. Williams* (1985) 169 Cal.App.3d 951, 957.) Violation of Vehicle Code section 10851, subdivision (a) by

18.

unlawfully taking a vehicle with the intent to temporarily or permanently deprive the owner of possession constitutes a form of theft. (*People v. Bullard* (2020) 3 Cal.5th 94, 109; see *People v. Gutierrez* (2018) 20 Cal.App.5th 847, 856.) Posttheft driving and joyriding are not forms of theft.[8] (*Bullard*, at p. 110.) Thus, whether a defendant may be impeached with a prior conviction for violation of Vehicle Code section 10851, subdivision (a) depends on the facts under which he or she was convicted.

In ruling that defendant's violation of Vehicle Code section 10851, subdivision (a) is a crime of moral turpitude, the trial court did not examine the theory under which defendant was convicted. Facts pertaining to this conviction are not contained in the record. The present record is insufficient to support the court's determination that the prior conviction involved moral turpitude.

Whether defendant may be impeached with this offense is an issue that must be resolved by the trial court in the first instance, upon such facts as may be presented on remand. We take no position on the ultimate resolution of this issue.

## III. Issues Relating to Defense Witness Jay S.

Defendant contends his right to due process was violated when the prosecution failed to immunize Jay S., who he characterizes as an essential and exculpatory witness. He further argues that the court's exclusion of Jay's out-of-court statement violated his right to present a defense.

### A. Additional Background

On September 26, 2022, a defense investigator contacted Jay S. by phone and created a written summary of that conversation. In relevant part, the summary provided as follows:

---

[8] Nonetheless, under certain factual circumstances, even posttheft joyriding may evince moral turpitude. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1134 [prior conviction involving joyriding in a stolen vehicle while evading police and disregarding safety of others evinced moral turpitude].)

19.

"Jay purchased the black Chevy pickup . . . around October or November of 2021. The Chevy pickup was parked on [a corner] in Bakersfield, CA. The window of the pickup truck had written on it, for sale, and had a phone number. Jay called the number and spoke to the seller. Jay said the seller was a male – the seller told Jay that he would meet him and that he was coming from Lamont. Jay described the seller . . . . Jay did not recall the individual's name but thought that his last name was Garcia. During the transaction, Jay said the seller had a bad attitude. Jay added that the corner where he purchased the pickup had several people there selling stuff – it was like a small swap meet, Jay said.

"Jay said that the pickup was in 'horrible shape' – the back window was broken out, the interior was ripped up, and some of it (the door panels) had been removed. Jay said that he regularly buys vehicles and parts them out, and that was what he planned on doing with the pickup. Based on the condition of the pickup, Jay said he initially thought that it might have been stolen. Jay asked the seller if the pickup had been stolen, and the seller told him that it had not. Prior to purchasing the pickup, Jay contacted the Department of Motor Vehicles (DMV) and had the VIN# of the pickup ran. The VIN# came back 'clean,' Jay said. Jay purchased the pickup for either $700.00 or $750.00. Jay borrowed money to purchase the pickup, which he still owes. Jay received the pink slip and insisted on a bill of sale, which the seller provided. After purchasing the pickup, Jay said that he put all the paperwork in the visor.

"The same day that Jay purchased the pickup, [defendant] came by his residence and asked for a ride. Instead of giving [defendant] a ride, Jay told [defendant] he could borrow the pickup. Jay said it was either the same day that [defendant] borrowed the pickup or the next day that he ([defendant]) was arrested. Jay said that [defendant] did not steal the pickup – Jay purchased the pickup and let [defendant] borrow it, and the paperwork was in the visor of the pickup. Prior to [defendant] borrowing the pickup truck, Jay said that he had not registered it in his name."

During motions in limine, the prosecution requested an offer of proof regarding Jay, who was listed as a defense witness. Defense counsel confirmed that the prosecution was not given discovery regarding this witness and suggested that Jay required appointment of independent counsel to determine whether he would testify or invoke his Fifth Amendment rights. The issue was deferred, pending appointment of counsel for Jay.

Subsequently, counsel was appointed for and spoke with Jay. The following colloquy occurred on the record:

> "[APPOINTED COUNSEL]: . . . [U]nless the DA is willing to give him immunity, he is going to invoke.

> "THE COURT: All right. And would that be a complete invocation or are there some questions or line of questioning he's willing to answer?

> "[APPOINTED COUNSEL]: No. A complete invocation."

The court then instructed Jay's appointed counsel, defense counsel, and the prosecutor to have further discussions off the record and to inform the court of any changes, absent which, the court would assume Jay would not testify.

Subsequently, defense counsel "realized" that Jay's invocation of his privilege against self-incrimination rendered him unavailable as a witness, and his statement to the defense investigator was admissible as a statement against penal interest pursuant to Evidence Code section 1230 and as a matter of due process. She argued, both orally and in writing, that the defense should be permitted to admit Jay's out-of-court statement into evidence. The prosecutor argued Jay's statement was irrelevant because it did not indicate whether defendant was aware of Jay's history with the vehicle. The prosecutor characterized Jay's request for immunity during the earlier motions in limine as a request for "complete immunity."[9] The prosecutor stated she could not offer Jay "complete immunity" but could offer him use immunity. The prosecutor clarified that she did not offer use immunity in the prior proceeding but was willing to do so. Defense counsel also pointed out that use immunity had not been offered to Jay. The court determined Jay's statement was testimonial hearsay but was "arguably" against penal interest. The court excluded the statement on the ground it was unreliable and would violate the People's Sixth Amendment rights.

---

[9] The only request for immunity made on the record was in appointed counsel's colloquy with the court, which is transcribed above.

The court subsequently revisited its ruling and acknowledged that its prior Sixth Amendment analysis was not apt. However, the court maintained that the statement was unreliable. The court opined that Jay was unavailable and that some aspects of the statement were against his penal interest. The court afforded the parties a further opportunity to be heard on the issue.

At the court's request, the prosecutor detailed Jay's lengthy criminal record, which included several theft-related offenses constituting crimes of moral turpitude. Defense counsel argued exclusion of the statement presented a due process issue and that, absent the statement, the jury could conclude that defendant was "making up some friend" when he reported to officers that the truck belonged to a friend. Defense counsel argued Jay was unavailable and the statement was reliable, but she also acknowledged that some aspects of the statement were likely untrue. She argued the statement should not be excluded in its entirety and that the People could admit evidence of Jay's prior criminal history to argue against the statement's reliability. The prosecutor again argued the statement was not against penal interest, and was unreliable, untimely, and irrelevant, inasmuch as it did not reflect that Jay shared with defendant how he obtained the vehicle. Defense counsel argued that the statement was relevant and reliable.

The court ultimately determined Jay was unavailable based on his having invoked his Fifth Amendment privilege against self-incrimination. However, the court determined the statement was not against penal interest and instead was exculpatory. The court also determined the statement was not reliable based on the relationship between Jay and defendant, the timing of the statement, Jay's criminal record, the context in which the statement was made, and inconsistencies between the statement and the state of the evidence. Additionally, based on the timing of the statement, the court opined that the defense should have provided the statement to the People sooner. The court ruled Jay's statement was not admissible and prohibited the defense from using it.

Finally, the parties reargued the issue after defendant testified and the court did not alter its ruling.

### B. Failure To Offer Immunity

Defendant contends his due process rights were violated by the prosecutor's failure to offer immunity to Jay.

The prosecutor was not required to offer Jay transactional immunity to effectuate defendant's due process rights. Rather, use immunity would have been sufficient to compel Jay's testimony. (*Kastigar v. United States* (1972) 406 U.S. 441, 453 [use immunity is sufficient to compel testimony over a claim of Fifth Amendment privilege].)

In light of our reversal of the conviction, issues relating to the prosecutor's conduct in the prior proceedings are moot. Although the record is clear that the prosecutor made no offer of use immunity to Jay, she expressed her willingness to do so. Accordingly, any issues relating to the prosecutor's prior failure to offer Jay immunity may be remedied on remand. We need not, and therefore do not, reach the issue of whether her prior failure to offer Jay immunity violated defendant's right to due process.

### C. Exclusion of Jay's Out-of-court Statement

Defendant contends the court abused its discretion in excluding Jay's out-of-court statement as unreliable and not against penal interest, and that the exclusion of the statement violated his right to present a defense.

Again, in light of our vacatur of the conviction, this issue is moot. Moreover, because Jay may be compelled to testify in any retrial upon the prosecutor's grant of use immunity, any guidance we might provide regarding the admissibility of Jay's out-of-court statement would be premature.

## IV. Certification of Records in Bifurcated Trial

Defendant contends the court erred in relying on uncertified hearsay documents to find prior conviction allegations true.

## A. Additional Background

In bifurcated proceedings, the court found true two of three alleged prior conviction allegations (§ 666.5, subd. (a)).

In support of these allegations, the prosecutor admitted booking photographs, a DMV record, registers of action/dockets, and defendant's RAP sheet. Defendant objected to this evidence as follows:

> "[DEFENSE COUNSEL]: I'll object specifically on certification and just kind of make a general objection and submit.
>
> "THE COURT: When you say on objection on certification, do you feel that any of the documents [the prosecutor] is seeking to admit were not properly certified?
>
> "[DEFENSE COUNSEL]: Well –
>
> "THE COURT: It looked like they all had the stamp on them.
>
> "[DEFENSE COUNSEL]: I saw that stamp. It's still an objection I like to make."

The court overruled the objection and admitted the documents, stating "[t]hey all appear to be properly certified briefly but I haven't looked at them for the details and so forth."

## B. Analysis

Defendant contends the registers of action were not properly certified under Evidence Code sections 452.5 and 1530. He further contends the RAP sheet was not properly certified under Evidence Code section 1280. The People do not dispute that the registers of action were not properly certified, but argue that the RAP sheet was properly admitted under Evidence Code section 1280. Defendant maintains that the certification stamp on the RAP sheet did not convey sufficient information to document that the RAP sheet originated from a source under an official duty to report the convictions.

24.

Again, this issue is mooted by our vacatur of the conviction and associated allegations. Moreover, the question of whether a party has met the foundational requirements of Evidence Code section 1280 is a discretionary determination for the trial court. (*People v. Martinez* (2000) 22 Cal.4th 106, 119–120.) None of the parties' arguments on this point were considered by the trial court. Accordingly, the trial court may address these issues on remand, if necessary.

## **DISPOSITION**

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.


DETJEN, Acting P. J.

WE CONCUR:


MEEHAN, J.


SNAUFFER, J.